J-S85002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.A.J.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.F., FATHER | |
| | No. 1306 EDA 2016 |

Appeal from the Order Entered March 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#: CP-51-AP-0000333-2015
DP#: CP-51-DP-0000623-2014
FID#: 51-FN-000592-2014

| | |
|---|---|
| IN THE INTEREST OF: K.A.-M.T., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.F., FATHER | |
| | No. 1307 EDA 2016 |

Appeal from the Order Entered March 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#: CP-51-AP-0000416-2015
DP#: CP-51-DP-0000766-2014
FID#: 51-FN-000592-2014

| | |
|---|---|
| IN THE INTEREST OF: M.T.F., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.F., FATHER | |
| | No. 1308 EDA 2016 |

Appeal from the Order Entered March 23, 2016

In the Court of Common Pleas of Philadelphia County
Family Court at No(s): AP#: CP-51-AP-0000334-2015
DP#: CP-51-DP-0000767-2014
FID#: 51-FN-000592-2014

BEFORE: PANELLA, J., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J. **FILED DECEMBER 16, 2016**

Appellant, M.T.F. ("Father"), appeals from the orders involuntarily terminating his parental rights to his three children, M.A.J.F. (born August 2011), M.T.F., Jr. (born March 2013), and K.A.-M.T. (born March 2014).[1] Father contends that the evidence at trial was insufficient to support the trial court's decision. After careful review, we affirm.

On May 2, 2012, Mother entered a negotiated guilty plea to the charge of corruption of minors, whereby several other sexual offense charges were *noll prossed*. The victim in these charges was Father. Mother received a probationary sentence of three years.

On March 7, 2014, a general protective services report was referred to the Department of Human Services ("DHS") alleging that K.A.-M.T. had tested positive for marijuana at birth. It was later determined that Mother had tested positive for marijuana during delivery. DHS had K.A.-M.T. taken

---

[1] K.T. ("Mother"), the mother of all three children, had her parental rights involuntarily terminated at the same proceeding. Her appeals are docketed at 1135, 1136, and 1137 EDA 2016.

- 2 -

into protective custody and ultimately declared dependent and placed with a foster family.

DHS visited Mother's home, which consisted of two non-adjacent rooms in a boarding house. Mother indicated that she locked the children into separate rooms at night as a protective measure. Concerned with the circumstances, DHS arranged for Mother to be admitted into a residential treatment program where she could live with her two older children.

After a short time in the program, Mother was taken into custody for violating her probation. DHS took M.A.J.F. and M.T.F., Jr. into protective custody, as they could not remain at the treatment program in Mother's absence. Both children were ultimately declared dependent and placed with the same foster family as K.A.-M.T.

Approximately nine months later, in January 2015, Father was arrested and charged with aggravated assault, terroristic threats with the intent to terrorize, stalking – intent to cause fear, simple assault and recklessly endangering another person. Shortly thereafter, Mother submitted herself to her first drug screen after her release from imprisonment for the probation violation. She tested positive for marijuana.

Evidence was presented that, at the time of the termination hearing, Father had never complied with drug and alcohol counseling and did not participate in parenting classes. Furthermore, he had not located suitable housing. Father's compliance with his objectives was described as minimal.

The trial court determined that termination was appropriate under 23 Pa.C.S.A. § 2511(a), subsections (1), (2), (5), and (8), as well as § 2511(b), and entered orders terminating Father's parental rights, and this timely appeal followed.

On appeal Father raises five issues, but these merely consist of challenges to the sufficiency of the evidence to support the trial court's findings under each of the above sections. Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (quoting *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000)).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See id*., at 806. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

In terminating Father's parental rights, the trial court relied upon § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

…

> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
> >
> > …
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

This Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (citation omitted).

With respect to § 2511(a)(2), termination of parental rights due to parental incapacity that cannot be remedied, the grounds are not limited to affirmative misconduct; "to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted). Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See id*., at 340. A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the

responsibilities of parenting." ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (citations omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

At the termination hearing, DHS social worker Lynn Speight testified that Father never attended drug and alcohol counseling. ***See*** N.T., Termination Hearing, 3/23/16, at 27. Furthermore, he had never attended parenting classes that DHS provided to him. ***See id***. Nor had he ever located appropriate housing in which to have to custody of the children. ***See id***.

In addition, Father had two troubling incidents while he had unsupervised visitation with the children. In the first, he took K.A.-M.T. to get a treat. ***See id***., at 29-30. Approximately 3 hours later, Father's uncle contacted the person with physical custody to inform her that Father had dropped the child off and disappeared. ***See id***., at 30.

In the second incident, Father purported to take all three children to a local mall. ***See id***., at 31. He was not prepared to take the children on such an outing; among other reasons, he did not have a stroller. ***See id***., at 30. When DHS suggested a more appropriate destination, Father refused and insisted on taking the children to the mall. ***See id***., at 31. However, an

interview with the children after the outing revealed that Father had not gone to the mall, but met with Mother and took the children to Mother's parents' home. *See id*. This was a violation of the visitation plan, as Mother's visits were to be supervised, and her father had an offense that disqualified him from visitation. *See id*. After this incident, Father's visitation was modified to supervised. *See id*., at 32.

On appeal Father complains that DHS did not provide enough opportunities or assistance to achieve his goals. This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*., at 340.

Here, evidence at trial established that Father had not availed himself of the opportunities and services that DHS provided him. After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. Accordingly, we find that the trial court's determinations regarding § 2511(a)(2) are supported by sufficient, competent evidence in the record.

When termination is found to be appropriate under subsection (a), the trial court must still consider whether termination of parental rights would best serve the developmental, physical and emotional needs of the child.

*See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*. at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id*.

At the termination hearing, social worker Speight testified that after the children had been removed, Father had not regularly attended visitation sessions with the children after his visitation was modified to supervised. *See* N.T., Termination Hearing, 3/23/16, at 32. Social worker Akia Butts testified that the children look to the foster mother to have their needs met. *See id*., at 76-77. Furthermore, she testified that she did not believe that the children would suffer irreparable harm if their biological parents' rights were terminated. *See id*., at 78.

After careful review of the record, we find that competent evidence in the record supports the trial court's determination that the children would not suffer harm from termination of Father's parental rights, and that the termination would best serve the needs and welfare of the children. The testimony at the hearing established that the children had been placed for approximately 24 months and had established an appropriate bond with the foster mother. We therefore find no basis upon which to disturb the trial court's orders.

We affirm the orders terminating Father's parental rights on the basis of § 2511(a)(2) and (b) of the Adoption Act.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016